Good afternoon, Illinois Appellate Court, First District Court is now in session. The Sixth Division, the Honorable Justice Sharon O. Johnson presiding, case number 22-0424, People v. Anthony Jackson. Good afternoon, I'm Justice Sharon O. Johnson and I'm joined by my colleagues Justice Michael Hyman and Justice Carl Walker. I'd like to begin by first extending an apology for starting a little late today. Unfortunately, our first case had some technical difficulties. And one of the attorneys was late joining so that pushed the rest of the cases back about 20 minutes. So I ask for your please state your names for the record. Yes, I'm Adrienne Sloan. I represent Anthony Jackson. I'm Assistant State's Attorney Noah Montague on behalf of the state. Okay, welcome. You'll both be given 20 minutes in which to make your argument on today. The appellant will have an opportunity for rebuttal. How much time would you like to reserve for your Very well, you may begin. Okay. Again, good afternoon, Your Honors. May it please the court. My name is Adrienne Sloan. I'm with the Office of the State Appellate Defender on behalf of Anthony Jackson. The events that occurred on the CTA Green Line platform on the evening of March 16, 2013, were shocking and inexplicable. Why would Anthony Jackson, a college student with no criminal history or violent background whatsoever, engage in a seemingly random physical altercation with Sanchez Mixon, ultimately causing Mixon's death? Attorney George Jackson told the jury at Anthony's murder trial was that the reason was that Anthony was defending himself. Attorney Jackson declined, however, to provide available evidence that Ultimately, Attorney Jackson's bizarre, erratic conduct during Anthony's proceedings led to Jackson being suspended from the practice of law. But more importantly, it led to Anthony's conviction. Anthony Jackson was convicted of first-degree murder and is currently serving 25 years in prison because his attorney put on a pure self-defense case without introducing evidence to support it. Were it not for counsel's indisputably deficient performance, Anthony would not be in prison for first-degree murder. What indisputably ineffective performance are you addressing? What's your best argument? The best argument? I mean, you make several arguments. What's the best one for reversing? Of course, Your Honor. So the most serious error by Attorney Jackson was that he made the decision not to request second-degree murder instructions. And the reason that I say it's indisputably deficient performance is because if you'll note in the state's brief, they have arguments about waiver and they have arguments about prejudice, but there's no argument that what counsel did was deficient. The judge here, I just want to say something about the trial judge here, because the trial judge here seemed to have been so very careful and meticulous as the judge went through the questions with Anthony Jackson and made sure that it was his decision not to testify. She made sure that it was his decision that he didn't want to have instructions on second-degree murder. And she was really careful with that. Each time there was something said that caused her pause and she went back to it and she made sure she addressed it. And that's why I'm having a difficult time. I'm having some difficult times in the other direction as well, but I'm really struggling with that part for right now. If you can just kind of help us with that. And that's in line with the question that Justice Simon just asked. Absolutely, Your Honor. I think that the fact that Judge Woloski was so concerned here with the decisions that Attorney Jackson was making that she stopped multiple times throughout this trial to make sure that Anthony was really understanding what was going on really actually underlines just how bizarre, how no reasonable attorney would make the choices that Attorney Jackson was making. That said, and a lot of these things that the admonishments were given for, we just have a record that's so unusual here that I don't think the admonishments could cure the errors that the attorney was making. Particularly, you spoke about the right to testify in his own defense. Attorney Jackson stated on the record that he had actually threatened Anthony and stated he would quit in the middle of trial if Anthony did so. So even though we have these admonishments, we have Judge Woloski attempting to make sure that Anthony understood what was going on. At that point, there can really be no confidence that Anthony felt comfortable making this choice, particularly where we know that outside of trial, he's stating that he is going to withdraw if Anthony testifies. It doesn't indicate that counsel was prepared for trial. It doesn't indicate that counsel was going to do an admonishment. He has a right to testify and you will remain on the case. That's correct. She did address it and she did attempt. I just think that the error is so serious and it's such a strange decision. Such a deficient choice by Attorney Jackson that even that admonishment just can't cure the deficient performance here and particularly where it was prejudicial. When you say it's a strange decision, are you talking about him testifying, not testifying? No, I'm speaking about the fact that he actually not only did he threaten his client in order to induce him to give up his constitutional right, which of course no reasonable attorney would make that choice, but also he told the judge on the record that he was doing so, he was performing deficiently, that he was trying to induce his client to give up that right. That said, it was very prejudicial that Anthony didn't get the chance to testify in his own defense. The judge did an excellent job, as Justice Walker mentioned, because all this happened on the record. Counsel Jackson said on the record about what he said and the court said no, no, no, and the court said that's improper. He has a right to testify if your client chooses to testify, that you are his lawyer. Okay, so I just went through the questions with Mr. Anthony Jackson. Mr. Anthony Jackson, do you understand? Do you want to testify or do you not want to testify? And his answer was I do not want to testify. She said you do not and he said yes. All right, what else could she have done? I mean, you're saying we should not consider the record? No, Your Honor, I'm not saying that and I don't dispute that Judge Waski did her absolute best to make sure that she was attempting to preserve Anthony's rights. What I'm saying is that when we have a situation that we know from the record that this person is being threatened, that this person's attorney is telling them don't testify despite the fact that this is his constitutional right. He's already been told that his attorney's telling him it's a bad idea to testify, that he shouldn't do it, that his choice is so strong, that counsel's choice is so strongly that he should not do it, that he's actually going to quit if he does do it. And again, the fact that that has happened before these admonishments, how confident could Anthony be that his attorney would actually in good faith allow him to testify, question him appropriately, that he had prepared for testifying after we know what's happening outside the record, which is plainly improper. But wasn't there evidence presented that supported the self-defense even without the testimony? So couldn't he make the case without Mr. Jackson's testifying on his behalf? So there was some evidence. There was some evidence of Anthony's state of mind. However, what we don't have is Anthony having the opportunity to tell the jurors exactly what it was that gave him the belief that he needed to defend himself. We have other people stating, we have Ms. I believe it was Anthony's aunt testify that he stated that he was defending himself. But what we don't have is Anthony's own testimony as to why he was in the state of mind that he needed to do so, which is integral to his self-defense case. And I think particularly- But his sister testified as to what he said when he came back to the car, correct? That's right. That's right. So she testified that he said that Mixon was crazy and that he had to defend himself. That said, I think what's really interesting here is that this is, of course, a retrial after the first trial. And we know what he said at the first trial, which was even more illuminating because I think the most troubling part about the video is not just whether Anthony at the outset believed he had to defend himself, but also information as to why Anthony reengaged in the altercation after it seemed that Mixon was incapacitated. At the first trial, Anthony did explain this. Anthony said he thought he was still getting up. It was his belief that he was still getting up. And the jury needed that in order to understand that he believed that he was still defending himself throughout the incident. But they still found him guilty after the first trial, even with that testimony, correct? Well, that's correct. But I don't think that we can assume that what happened at the first trial would be illuminating as to what happened at a fair trial because, of course, he received a new trial after that first trial because, again, his initial attorney was ineffective. His initial attorney was drunk throughout the trial. His initial attorney didn't put on proper evidence. He didn't even watch the video. So there's no way of showing that his examination of Anthony would have been exactly how it went here. And I just want to point out that it's not just that counsel didn't allow Anthony to testify that caused counsel's ineffectiveness to have this be a fair trial. I think it's the cumulative effect of all of the errors that I outlined in my brief. So just if it's okay, I'd like to move on to a couple of other ones. Before you do, just answer some quick questions for me. Anthony was 19 years old at the time? No, I believe he was in his 30s. Anthony's in his 30s. And where does he attend school? He goes to DePaul. What year? I believe it was his third year. I'm not absolutely sure about that, Your Honor. Okay. And how long had George been practicing law? George had been practicing law for over a decade at that point. George was actually a federal prosecutor prior to he entered private practice for a couple of years, and then he ceased doing that in order to represent Anthony during these proceedings. Who was older? I believe it was George. I'm actually certain it was George. Okay, thank you. Of course. So again, I briefly mentioned this, but I think the most serious error in this case was that- One second. One more question. Was he suspended from the practice of law because of this case? That's correct, Your Honor. Actually, three weeks ago, the ARDC issued their decision suspending him from the practice of law due to his behavior during this case. That's right. Well, you say his behavior. Was there something else going on that I may not be aware of? Yes. So he was suspended mainly for motions that he filed and comments that he made during the period between the two trials and other things that happened not within the presence of the jury, which kind of explains why I didn't raise these issues in the brief because the jury didn't see it happening. But some of the things were that he filed motions which were sexually against almost all the judges who presided over these cases. I'm sorry, accusations of impropriety against- So the question becomes, I know you didn't raise any of this, but was George okay? Your Honor, I don't know that he was. I would note that Anthony did have reason to believe that he was because there was an interlocutory appeal filed that Anthony filed in order to make sure that George can stay on the case. And in that interlocutory appeal, this court found that George could continue to represent Anthony. I think that this trial record shows behavior that was extremely bizarre, extremely unusual, like nothing I've ever seen. Great. I just want to come back to something really quickly because I do know that when the judge was questioning him on his right to testify, I was struck by George's comment when I mentioned earlier that I was kind of struck by both sides here, where George, he interrupts the court and says that he has an obligation to say something. And he says that, I want you to know that I've already instructed my client to stop challenging. He's speaking to the judge. I wanted to encourage my client to stop challenging you and just simply answer your questions. And as I read over the record, it didn't seem that Anthony was challenging the judge at all. In fact, Anthony was just saying yes to everything that the judge said. Yeah, I found that unusual as well. What my understanding of that comment was, was there were certain times in this trial record, and I've read the trial record a lot, where it seems that Anthony might be starting to say something or beginning to interrupt during examinations of different people. And George is kind of asking him to quiet down or asking him not to respond. So I think maybe it was perhaps a response to that generally. And then he had another thought, and that other thought was about the right to testify issue. Yeah, I thought George's comment was George, the attorney, Attorney George Jackson's comments were misplaced at that point. Yeah, I would agree with you. I would definitely agree with you. And I think, I think that another interesting point about that is it just speaks to the fact that George was very strongly dissuading, threatening, trying to keep Anthony from exercising his constitutional right to tell the jury exactly what his state of mind was in this self-defense case. And we're also, I'm sorry, Justice Johnson, go ahead, you can go ahead. You're running short on time. So if you can make your final points, Justice Walker, if you had another question. I do, because at that point, that's when George also tells the court that, because it's not just Anthony saying, alleging that he told me that if I testify, he's going to withdraw. George actually says this to the court. Absolutely. He's going to testify, I'm withdrawing right now. And I just, again, just these comments just, I mean, we've all practiced law, and these comments don't seem normal to me. It almost sounds like someone that may be mentally ill. Absolutely, Your Honor. And I think actually the ARDC decision does, does address that, in that in the ARDC decision, he was seemingly questioned about whether he was, his conduct was fueled by maybe the stress of this case, or some mental illness, or the fact he was representing his brother. And the ARDC came out with the conclusion that because George didn't admit to that or didn't agree with that, that it really couldn't be considered for the purposes of the suspension. That said, I think you're absolutely right. This is extremely bizarre. I think one thing about even just writing this brief is that the case law, nothing can be directly on point because it's, it's so extreme that an attorney would admit to such a, such an error to get, to threatening his client to keep him from exercising his constitutional rights. So my question then for you, Ms. Sloan, and I know Justice Johnson has already told us you're out of time, is how do we address that though? Because, again, I started with, the judge was extremely meticulous and the judge was so very careful. But I also struggled with what I'm talking about now, that I saw problems with the lawyer that appeared to me to be signs of mental illness, but I don't have a lot of information. And you didn't argue what happened in between with all the motions that he filed that made no sense. His racial remarks made in court documents, his anti-Semitic remarks made in, so in documents that he filed. Well, none of that is, none of that was before us until now. So. So my, my job, and when I read this record, what I, what I need to do and what I want to do is to show that there was prejudicially deficient performance here. So I raised errors that occurred in front of the jury. What I'm saying is, it certainly seems that George was suffering mental health issues. My concern is making sure that Anthony had a fair trial. And the, the errors that I've outlined in my briefs are the errors that were prejudicial and which prevented Anthony from having a fair trial. Whatever the reason was, whatever George was going through, if, if Anthony didn't receive effective assistance of counsel, then he deserves to have a fair trial. He deserves to have an attorney who's allowing him to exercise his constitutional rights and who's putting on a self-defense case that makes sense, is coherent, is, you know, he's introducing all the appropriate evidence that needs to, that should have been introduced, that was available here, that attorney Jackson decided not to do so. Whatever the reason for this decision, whether it was because he was having mental issues during this case, the operative question is whether Anthony received a fair trial. And I think due to all this bizarre behavior and the effect that it, that it had on the outcome, we can't show that he did. I just, just briefly to, in conclusion, despite the unfavorable outcome of that first trial, Jackson declined to seek second degree murder instructions at trial two, despite that this was a self-defense case and the jury desperately needed to hear information regarding Anthony's mind. Jackson, of course, threatened Anthony to keep him from testifying. And finally, despite that the jury could have had evidence that Mixon was the only individual involved in this altercation with a violent past, Jackson didn't use this evidence and again, stated on the record an inappropriate reason, which was that he was concerned with Mixon's reputation over that of his own client. Anthony's, if there are no other questions, we would just ask that Anthony's cause be once again remanded so that he can have a fair trial. Thank you very much. Attorney Montague. Good afternoon. May it please the court, Assistant State's Attorney Noah Montague on behalf of the state. Your Honor, this case is about Sanchez Mixon. Sanchez was the victim here. He was brutally beaten and stomped to death for no reason. This beating was caught on video. The entire incident is on video and it makes clear that he was unarmed. He never attacks. He doesn't even try to get up after he's incapacitated and the defendant came over and stomped him to death. In a word, he was murdered. We didn't see what happened leading up to that as they were coming up the stairs, did we? So we don't know what happened before that. I believe the stairs was the first, but there's been no allegation that anything did happen in two trials. But there was an allegation that he was the aggressor, correct? To my recollection, there wasn't an allegation about anything that happened before they arrived at the station. That's my recollection. When you say station, you mean platform? Yes. So, I mean, that's what my understanding is the interaction that occurred is all on tape. That's my understanding. And it's important to note that because of the issues raised here that this defendant has already had one trial where he testified and the jury was instructed on second degree murder and he was still convicted of first degree murder. How can we take account of that? He got a right to a new trial, right? So the question is whether this trial, the attorney was ineffective or effective? Well, Your Honor, the question presented here because the state is not arguing that this wasn't can be resolved strictly on prejudice. So the question presented is whether or not there's a reasonable probability that the outcome would have been different had counsel not provided deficient performance. And so the fact that he did testify and did have the jury instructed on second degree murder at the first trial goes to that reasonable probability. It's already happened and the jury already rejected it. But that's ignoring the fact that that attorney was incapacitated and everything else that counsel talked about. I mean, if that wasn't true, we'd be talking about something different. So, I mean, you can't have it both ways. There was a reason why that case was reversed. And so to say then that that was a fair trial when it wasn't is to close our eyes to that situation. So I think we still have to look at what's here. And based upon what's here, what is your argument? Well, the first thing the state would point out is that for all that happened in this case, that it's just important to remember that ineffective assistance of counsel is not a structural error. There's always been a prejudice component to an ineffective assistance of counsel claim unless counsel is alleged to have completely failed to test the state's case. But that argument hasn't been made here. And the record doesn't support it where counsel vigorously and at length argued for defendant's innocence. And, you know, a typical case where you have counsel not testing the state's case is one where they stipulate to the fact that didn't happen in this case. And counsel also brought up a fair trial and cited in the There's no due process claim here. There's no prosecutorial error here. There's no court error here. There's no brain splattered uniform, no inflammatory evidence, no appeals to the jury to respond to the victim's family, no testifying objections. This case has no resemblance to blue whatsoever. But let's talk about what this case is about, though. Those things it's not. But it is about according to what we just heard. Okay. I'm asking you to respond to what counsel's argument is. This attorney was so deficient and outrageous and did things that she found to be atypical and unheard of. I mean, she was using words that you don't normally hear about an attorney, even when it's ineffective. I mean, this was just a total failure on the part of the counsel. That to me was her argument. This is just so bad that he deserves another trial. What's your response? Well, in part, what I just said is part of the response, Your Honor, is that there isn't deficient behavior that results in automatic reversal. There must be prejudice. And what the state has argued here is that there is no prejudice because of the video. The video is conclusive. It is a brutal and devastating video that is just hard to watch. We don't know what the words were, right? We don't know if there were words between them. They had a lip reader that couldn't figure out what that was. Is that correct? And the witness across the platform couldn't hear either. That's correct, Your Honor. But the state would argue that there are no words that Santos Mixon could have said that deserved what happened to him. But didn't Jackson say in the original trial that Mixon had came up to him and put his hand in his pocket and Anthony told him you can't be putting your hand in people's pockets? I believe that was his testimony, but to my recollection, the video did not reflect that interaction. But those would have been the words, right? Sure. Or could have been the words. They could have been the words, Your Honor. Now, the one case the state cited was a reasonable doubt case. I certainly agree with my fellow counsel here that it was difficult to find a case to compare this to. But the case of defendant argued to this court that his first degree murder case should be mitigated to second degree murder. But this court refused to do so because there was no weakness in the state's case. In that case, the defense actually presented evidence that the victim had a gun. Obviously, the jury did not believe that evidence and the victim had been shot in the back while retreating. And so this court refused to mitigate the case to second degree murder. And it is the state's contention that this case is essentially the same because of the video. Because that video shows everything that reasonably could have happened between the two of them. And it shows that the victim did nothing in this case. Second degree murder is for an unreasonable fear. It's not for a delusional fear. There has to be something that the victim did and the victim simply did nothing here. But don't we ascertain whether or not the fear was reasonable by allowing the defendant to testify with any, you know, competent counsel, if they're arguing self-defense, you know, would they allow or even encourage the defendant to testify so that, you know, they can seek the lesser included? I know that's probably, you know, two different points. But it seems to me that any reasonable or competent counsel would recognize that, you know, we need to know what the defendant's state of mind was. Your Honor, the state isn't arguing that there wasn't deficient performance in this case. We're just, excuse me, we're not making that argument here. We're not trying to argue that there was some rhyme or reason that this court isn't seeing to Attorney Jackson's performance. What the state is arguing is that because that video is so conclusive, this defendant was not going to be found guilty of second degree murder regardless. And again, he did testify. He did have the jury instructed on second degree murder. And, you know, it's not normally relevant, but in this case, it is worth looking at the fact that these two juries in the cases that the defendant has, I believe the one was out for an hour and 25 minutes and the other one was out for an hour. Those are extremely short deliberation times in a first degree murder case. There was no factual issue in this case because of that video. Well, on the other hand, maybe it's because the counsel did such a poor job. You know, it was so pathetic that they were only out for an hour. I mean, that's the flip side of arguing. I'm not saying one way or the other, but there is a flip side. And I think that's what's being argued. Your Honor, the state maintains that the video is decisive in this case. And, you know, if granted another trial, defendant can testify, but that video is going to be shown. And that video is conclusive. And it's important to remember, you know, that there's no such thing as a perfect trial. Obviously, defendant did not have a perfect trial and the state is not arguing otherwise. But there is no prejudice here because of that video. That video is conclusive that this was a first degree murder and defendant's conviction should be affirmed. Okay. Any other questions from counsels? I'm sorry, from my colleagues? Okay. Rebuttal? Yes. Anthony was prejudiced by counsel's errors here. The jury needed evidence of Anthony's state of mind. The video shows Anthony's actions. And in a self-defense case, it was Jackson's responsibility to put on evidence showing Anthony's state of mind that he had a belief that he needed to defend himself. That would have come in through Anthony's testimony. That could have come in through evidence of Mixon's violent character. That could additionally, in this case where the video was, I would agree it was incriminating. So, that's why second degree murder instructions were vital in this case and another source of Jackson's error with not providing those self-defense instructions. If the jury had all of this, if it wasn't for Jackson's deficient performance, it is reasonably likely that Anthony would have been acquitted or at least found guilty of the lesser included offense of second degree murder. Any questions? Okay. Thank you. And attorney Montague, I actually took your pause to mean that you were done, but you did have a couple more minutes. Did you want to? No, no. Okay. All right. Thank you, your honor. Okay. And there are no other questions from my colleagues. Well, I want to thank you both for your patience today, but also making this difficult for us. It is a difficult case, but you certainly argued well and presented us with briefs for us to consider that we will certainly take under advisement. So, thank you very much. And that concludes my presentation. Thank you. Thank you.